**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RODJUAN ORLANDO JAMES
NEAL-WILLIAMS,

    Plaintiff,

    v.

DR. WILSON, *et al.*,

    Defendants.

Civil Action No.:  JRR-21-1893

## MEMORANDUM OPINION

In this civil rights action, Plaintiff Rodjuan Orlando James Neal-Williams alleges that Defendants Robin Cody, Jessica Moss, Angela Talley, Susan Malagari, Jada Sewell, Gulshan Uddin, Umu Kabba, Gladys Onokoko-Othepa, Capt. Alinda Nash, and Lt. Patrick Bean ("County Defendants")[1], and Sacari Thomas-Mohamed, M.D., and Keith Wilson, M.D. (Wellpath Defendants")[2] failed to provide adequate medical care in violation of his Constitutional rights.[3] The County Defendants have moved to dismiss the action or, alternatively, for summary judgment in their favor.  ECF No. 17.  The Wellpath Defendants have moved to dismiss the action.  ECF No. 20.  Neal-Williams opposes both motions.  ECF Nos. 18, 23.  Having reviewed the submitted materials, the Court finds no hearing is necessary.  *See* D. Md. Local R. 105.6 (2021).  For the reasons that follow, the pending dispositive motions will be granted in part and denied in part.

## BACKGROUND

### I.      Plaintiff's Allegations

The crux of Neal-Williams' Complaint is the Defendants' alleged failure to provide post-operative medical treatment on his right hand.  ECF No. 1.  Neal-Williams states that he arrived at

---

[1] The preceding Defendants are employed by Montgomery County, Maryland.
[2] The preceding Defendants are employed by Wellpath Health.
[3] The Clerk shall be directed to correct the names of the Defendants on the docket.

the Montgomery County Correctional Facility ("MCCF") on April 16, 2021, with screws and rubber bands in his hand following a surgery in November of 2020 *Id*. at 2. The screws connected to a brace with rubber bands to extend his fingers while undergoing physical therapy and preparing for another surgery. *Id*. Upon processing into the facility, the rubber bands were put into a medical property bag for the doctors to examine. *Id*. Neal-Williams contends that Dr. Wilson looked at the rubber bands but did not give them back to him. He repeatedly requested he be provided rubber bands and complained to nurses, correctional officers, and doctors about the need for the rubber bands, but they were never returned to him. *Id*. at 2-3.

In addition to being denied his surgical rubber bands, Neal-Williams alleges that medical staff failed to clean his screws daily to prevent infection, that he did develop an infection, and that medical staff failed to treat the infection. ECF No. 1 at 3-4. When Neal-Williams saw his surgeon on April 29, 2021, she removed the screws because of the infection and stated that he needed to proceed with surgery scheduled for May 5, 2021, or attend regular occupational therapy. *Id*. at 4. He also required antibiotics to treat the infection. *Id*. Neal-Williams states that it was only after the screws were removed that he started receiving daily cleanings of the wounds. *Id*. Neal-Williams states that he did not go to his scheduled surgery on May 5, 2021, and that he did not attend occupational therapy. *Id*. at 5. He alleges that when he asked Dr. Mohamed about therapy, he was told that they were trying to find a place for him to have therapy. *Id*. Neal-Williams alleges that his surgeon had already made arrangements for therapy, so there was no reason for the delay. *Id*. Neal-Williams prepared for surgery again on May 18, 2021, but that surgery was canceled. *Id*. Dr. Mohamed allegedly told him the surgery was canceled because they were still looking for a therapy provider. *Id*. Therapy was finally scheduled at the end of June, 2021, but the appointment was canceled due to a court date. *Id*. at 6. Throughout this time, Neal-Williams contends that Dr. Wilson and Dr. Mohamed denied him proper medication. *Id*. at 6.

Neal-William alleges that he was eventually informed that he should have been given an inmate handbook upon his arrival at MCCF that would explain how to "take action."  ECF No. 1 at 3.  He repeatedly asked corrections officers for a handbook, and they told him they could not find one.  *Id*.  Upon finally learning about grievance forms, Neal-Williams says he filed several, was told his issue was not grievable, and he appealed.  *Id*.  He alleges that he continued to submit grievances and medical slips requesting proper medical treatment, to which he did not receive a response.  *Id*. at 6-7.

Because he did not name proper defendants in his initial Complaint, on August 24, 2021 Neal-Williams was directed to file a supplemental complaint naming each defendant and how they were involved.  ECF No. 3.  Neal-Williams filed his supplement on September 27, 2021.  ECF No. 5.  In the supplement, Neal-Williams makes the following allegations as to each Defendant:

1. **Dr. Wilson:** When Neal-Williams arrived at MCCF, he saw Dr. Wilson and explained his history of hand surgeries as well as his need for the rubber bands in preparation for a surgery scheduled for May 5, 2021.  ECF No. 5 at 2.  He discussed his medications with Dr. Wilson and gave him the name of his surgeon and pharmacy.  *Id*.  Dr. Wilson told him he would get the rubber bands back, but he never did.  *Id*.  Dr. Wilson did not order the proper medications.  *Id*.  Dr. Wilson told Neal-Williams that he could not open his hand because of nerve damage whereas his diagnosis was contracture.  *Id*.  Neal-Williams told Dr. Wilson of the importance of regularly cleaning the screws and the need for therapy, but Dr. Wilson said that no therapy office wants inmates.  *Id*. at 3.  Neal-Williams contends that this was not true, because his surgeon had already made arrangements for his therapy.  ECF Nos. 1 at 4-5; 5 at 4.

2. **Dr. Mohamed**: Dr. Mohamed saw Neal-Williams several times when Neal-Williams explained the pain he was in, the lack of rubber bands, the infection, lack of therapy,

and lack of proper medication, but did not provide him with adequate medical care notwithstanding the regular appointments. ECF No. 5 at 5. Neal-Williams alleges that at a meeting on July 15, 2021, also attended by Defendants Robin Cody and Jada Sewell, Dr. Mohamed stated that the surgical rubber bands were lost and that "we messed up but now you have a therapy appointment schedule and follow up with your surgeon so let's focus on the future." *Id*. at 6. Neal-Williams alleges that Dr. Mohamed failed to comply with his surgeon's orders. *Id*. at 7.

3. **Robin Cody**: Defendant Robin Cody was the medical supervisor, who should have received the several grievance forms Neal-Williams submitted about his medical concerns including not having surgery, not having therapy, missing rubber bands, infections, and nurses and doctors not taking him seriously. ECF No. 5 at 8. Neal-Williams contends that he has not received a response to any of these grievances. *Id*. at 8-9. Neal-Williams also wrote a letter directly to Cody regarding his concerns, but he did not receive an answer. *Id*. at 9. At the July 15, 2021 meeting, Cody showed him a stack of his grievances, and stated that she will eventually answer them. *Id*. at 9-10. At the meeting, Cody would not let Neal-Williams complain about "her doctors" and said that they were not going to talk about the past now that a follow up with his surgeon has been scheduled. *Id*. at 10. She showed him a letter from his surgeon stating that he was no longer a candidate for surgery because of the failure to use the rubber bands and the lack of physical therapy. *Id*. at 11. Cody told Neal-Williams that he was lucky to even be getting medical attention because he is in jail. *Id*.

4. **Jessica Moss:** Defendant Jessica Moss handles inmate medical records and scheduling for surgeries and other outside medical appointments. ECF No. 5 at 12. She failed to arrange surgery dates or physical therapy dates and failed to coordinate dates with Neal-

Williams' court dates resulting in cancellations.  *Id*.  Moss also denied Neal-Williams access to his medical records.  *Id*. at 12-13.

5. **Angela Talley:** Defendant Angela Talley is the director of the jail and her employees are not doing their jobs correctly.  ECF No. 5 at 14.  Grievances are not being answered, and staff are not taking medical concerns seriously or accurately documenting them. *Id*.  Neal-Williams also contends that he was never given an inmate handbook, which was the fault of Talley's employees.  *Id*.

6. **Susan Malagary**: Defendant Malagary is the Warden of the jail and overseas grievances and the work of her employees.  ECF No. 5 at 15.  She ignored Neal-Williams' many grievances regarding his serious medical concerns.  *Id*.  She did not properly oversee her medical staff, who ignored Neal-Williams' surgeon's instructions. *Id*.

7. **Jada Sewell:** Defendant Sewell took over Cody's position as medical supervisor and was in the meeting with Cody and Dr. Mohamed in which Neal-Williams discussed his concerns and his many unanswered grievances.  ECF No. 5 at 16.

8. **Gulshan Uddin**: Defendant Uddin was the first nurse Neal-Williams informed about the infection he developed, to which she responded, "'you're not a doctor, don't tell me your hand is infected" and "say some prayer and read the Bible, you'll be fine." ECF No. 5 at 17.  She would not take his concerns seriously or put him on the doctor list and did not properly document the record.  *Id*.

9. **Gladys Onokoko-Othepa:** Defendant Onokoko-Othepa is a nurse who ignored Neal-Williams' pain and concerns regarding his hand.  ECF No. 5 at 18.  She continuously refused to put him on the list to see the doctor.  *Id*.

10. **Umu Kabba**: Defendant Kabba, a nurse, also ignored Neal-Williams' pain and concerns about his medications.  ECF No. 5 at 18.  She refused to allow him to see the doctor.  *Id.*

11. **Capt. Nash and Lt. Bean:** Defendants Nash and Bean were the grievance form coordinators.  ECF No. 5 at 20.  They did not act on the grievances or properly oversee their corrections officers to ensure the grievances were handled properly.  *Id.*

Neal-Williams attached copies of medical records and grievances to his Complaint.  ECF Nos. 1-1, 1-2.  He requests money damages, physical therapy, and surgery.  ECF No. 1 at 9.

## II.     Defendants' Responses

In response, the County Defendants argue that Neal-Williams has not exhausted his administrative remedies, that they were not deliberately indifferent to a serious medical need, and that they are entitled to qualified immunity.  ECF No. 17-1.  Specifically, Defendants argue that they could not be responsible for Neal-Williams' lack of adequate medical care, to the extent that he required medication, therapy, surgery, or outside appointments which they were not authorized to provide.  ECF No. 17-1 at 25.  In support, they submitted the declaration of Diane Combes, Clinical Nurse Manager, who declares that certain defendants cannot and do not provide medical care to inmates, and that certain other defendants are licensed Registered Nurses but they are "not licensed or permitted to prescribe or alter medication or order physical therapy, occupational therapy, surgical procedures, or appointments with medical professionals outside the Department of Correction and Rehabilitation."  ECF No. 17-2 at 2.   The County Defendants did not submit any medical records or the declarations of any defendant.  Defendants submitted a copy of the inmate-resident grievance procedures and guidelines in support of their argument that Neal-Williams did not exhaust his administrative remedies, but they did not submit any documents or

declarations regarding Neal-Williams' utilization of the administrative remedies procedures.  ECF No. 17-4.

The Wellpath Defendants argue that Neal-Williams failed to state a claim against them and failed to exhaust his administrative remedies.  ECF No. 20-1.  They attached copies of the medical records and grievance forms submitted by Neal-Williams.  ECF Nos. 20-3, 20-4, 20-5, 20-6, 20-7, 20-8.

## STANDARDS OF REVIEW

The Wellpath Defendants move to dismiss the Complaint for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  In reviewing the motion, the court accepts the well-pleaded allegations as true and in the light most favorable to the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).  "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because

they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

The County Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-

sided that one party must prevail as a matter of law." *Id*. at 252.  And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Neal-Williams is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## DISCUSSION

### I.   Exhaustion of Administrative Remedies

All Defendants assert the affirmative defense that Neal-Williams failed to exhaust his administrative remedies.  ECF Nos. 17-1 at 11, 20-1 at 9.  Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) 2008).  Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones").  "[A]n administrative

remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable.  An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances.  *Ross*, 136 S. Ct. at 1859-60.

MCCF has established a five-step inmate grievance procedure, set out in the Montgomery County Department of Corrections and Rehabilitation Departmental Policy and Procedure Handbook.  ECF No. 17-4.  Policy Number 3000-27 of the Departmental Policy and Procedure Manual directs any inmate with a complaint to request an Inmate Grievance Form.  ECF 17-4. First, inmates must complete and return the form to a correctional staff member for review and response.  *Id*. at 4.  Inmates may either accept or disagree with the action taken by the staff member. *Id*. at 5.  Second, if the inmate disagrees with the action, appropriate personnel have five working days to conduct the same review process as the initial correctional staff member.  *Id*.  Third, if an inmate disagrees with that determination, the inmate may appeal the decision to the appropriate Section head or designee, who must respond within five working days.  *Id*. at 5-6.  Fourth, if the inmate is dissatisfied with that response, the inmate may then appeal to the Warden for a review to be completed within five working days.  *Id*. at 6.  Fifth, the Warden's determination may be appealed to the Department Director within five working days.  *Id*. at 8-9.

### A.  County Defendants

Here, the County Defendants argue that Neal-Williams did not exhaust his administrative remedies because he did not file a grievance against any particular county defendant regarding his lack of adequate medical care.  ECF No. 17-1 at 13.  The County Defendants acknowledge that

Neal-Williams filed numerous grievances, *id.*, and they do not argue that he failed to pursue those grievances through the entire process.  Instead, Defendants argue that because Neal-Williams did not identify a particular defendant in a grievance, he has not exhausted his remedies as to that defendant.  *Id.*  In support of this argument, defendants cite *Heaton v. Wray*, 2010 WL 5390118 (D.S.C. Nov. 10, 2010).  In *Heaton*, the district court granted summary judgment in favor of two defendants who were not named in the plaintiff's grievance.  *Heaton*, 2010 WL 5390118.  However, the court in *Heaton* noted that while it is not necessary to specifically name a defendant in a grievance, the plaintiff must present "at least the essence of her claims."  *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218-219 (2007).  "'[I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'"  *Id.* (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).  The Fourth Circuit has found that where the grievance process does not require the naming of particular defendants, the exhaustion of administrative remedies does not require such specificity either.  *Moore v. Bennette*, 517 F.3d 717, 726 (4th Cir. 2008).  The County Defendants argue that MCCF's administrative remedy procedure requires inmates to name a particular staff member.  ECF No. 17-1 at 12, 17-4.  The document lists a number of matters that are grievable, including "individual employee and inmate/resident actions," but also identifies many other issues for which individual employees may be responsible but for which there is no requirement that the responsible party be named.  ECF No. 17-4 at 2-3.  The document also states particular instructions "[i]f an inmate/resident registers a complaint against a staff member," implying that plenty of grievances will not be against a particular staff member.  If the grievance process at MCCF required naming a specific person in the administrative process prior to filing a civil action, that requirement is not at all clear.  Neal-Williams submitted numerous grievances regarding both his medical care and the lack of responses to grievances.  ECF No. 1-2 at 1-4, 13-14.  The "essence" of Neal-Williams'

grievances, as well as his subsequent § 1983 claims, is clear. *Heaton*, 2010 WL 5390118. Further, there is nothing in the grievance policy and procedures that *requires* an inmate to name a specific employee when filing a grievance.[4]   Therefore, it was not necessary for Neal-Williams to individually name a particular employee in order to have exhausted his administrative remedies. As Defendants present no other support for their affirmative defense, they have failed to show that Neal-Williams' claims are unexhausted and the Complaint will not be dismissed on that basis.

### B.  Wellpath Defendants

The Wellpath defendants also present the affirmative defense that Neal-Williams failed to exhaust his administrative remedies; and they likewise do not present sufficient evidence to meet their burden of proof.[5]  ECF No. 20-1 at 9. The Wellpath Defendants do not present any evidence of their own.  Instead, they rely on the grievances submitted by Neal-Williams, arguing that none of those grievances "seeks a remedy akin to what is asserted against the Wellpath Defendants in this case." ECF Nos. 20-1 at 9; 1-2 at 1-4, 13-14. The Wellpath Defendants do not state whether Neal-Williams filed any other grievances or whether he appealed them through the entire process. In fact, the Wellpath Defendants note that a grievance presented by Neal-Williams "provides no evidence that the Plaintiff pursued this grievance through additional administrative action," erroneously shifting the burden to Neal-Williams when it is The Wellpath Defendants' obligation to prove they are entitled to the affirmative defense put forth.  ECF No. 20-1 at 10.  Nevertheless, the grievances in the record, which the Wellpath Defendants do not suggest were not pursued through all levels of appeal, very clearly complain about the lack of adequate medical care.  ECF

---

[4] Notably, Neal-Williams alleges in his Complaint that he tried and failed to acquire a copy of the inmate handbook that he was supposed to receive upon his arrival at MCCF.  ECF No. 1 at 3.  If true, he had no notice of the requirements, and the process was arguably unavailable to him.

[5] Neal-Williams may not be required to exhaust administrative remedies prior to filing suit against contracted medical service providers such as the Wellpath Defendants.  Maryland state prisoners are not required to exhaust administrative remedies before bringing a civil suit against a private medical services provider under contract with the Division of Corrections.  *Adamson v. Correctional Medical Services*, 359 Md. 238 (2000).  MCCF's grievance policy does not specifically mention medical complaints.

No. 1-2.  There is no requirement that Neal-Williams present all of the facts necessary to support a § 1983 claim in a grievance. The Wellpath Defendants have not shown that Neal-Williams failed to exhaust his administrative remedies prior to filing suit; therefore, the Complaint will not be dismissed on that basis.

## II.    Fourteenth Amendment Claims

Neal-Williams is a pre-trial detainee. As such, his § 1983 claims fall under the Due Process clause of the Fourteenth Amendment.  "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  "Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  Thus, deliberate indifference to the serious medical needs of a pretrial detainee violates the Due Process Clause.  *Id*. (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (concluding that, because it is sufficient for liability under the Eighth Amendment, "deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment), cert. denied, 529 U.S. 1067 (2000); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir.1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.")).  The Fourth Circuit has held that, though the precise scope of a pretrial detainee's Fourteenth Amendment rights is "unclear," a violation can be made

out when a pretrial detainee "shows [that a state actor demonstrated] deliberate indifference to serious medical needs" under cases interpreting the Eighth Amendment. *Mays v. Sprinkle,* 992 F.3d 295, 300 (4th Cir. 2021).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839, 840; *see also Anderson*, 877 F.3d at 544. Under

this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (holding that focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)) *see also Jackson*, 775 F.3d at 179 (holding that physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).

### A. County Defendants

1. **Personal Participation and Supervisory Liability**

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). County Defendants Sewell, Officer Nash, Officer Bean, Director Talley, and Warden Malagari argue that the Complaint fails to state a claim against them because it does not allege they were personally involved in the violation of constitutional rights.  ECF No. 17-1 at 20.  The County Defendants further argue that Neal-Williams has failed to state a claim of supervisory liability against defendants Cody, Warden Malagari, and Director Talley.   *Id*. at 21.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Defendants Warden Malagari and Director Talley are correct that Neal-Williams does not allege personal participation on their part or make a showing of supervisory liability. Neal-Williams' only allegations against Warden Malagari and Director Talley are that they failed to properly supervise their employees. This respondeat superior theory of liability is not tenable under § 1983. Therefore, the Complaint will be dismissed as to those Defendants.

Likewise, Neal-Williams' claims against Officer Bean and Officer Nash do not sufficiently allege either personal participation or supervisory liability in his alleged lack of adequate medical care. The officers are only alleged to have ignored grievances regarding medical issues or failed to ensure that the grievances were forwarded. ECF No. 5 at 20. Non-medical officials are entitled to rely on the professional judgment of medical staff. *Mullins v. Clear*, 2021 WL 5299665 at *5 (D. W.V. Nov. 15, 2021) (citing *Meloy v.* Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) and *Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017) (noting that non-medical officials "cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"). The Complaint will be dismissed as to Defendants Officer Bean and Officer Nash.

Finally, Defendants Cody and Sewell are alleged to be the medical supervisors who were in receipt of Neal-Williams' numerous sick call requests and grievances and who attended a meeting along with him and Dr. Mohamed regarding his care. ECF No. 5 at 8, 16. Neal-Williams alleges he sent multiple grievances about his lack of medical care, which the medical supervisors should have received and addressed. *Id*. He alleges further that Cody and Sewell participated in a meeting with Dr. Mohamed regarding Neal-Williams' medical care. *Id*.

As to Defendant Cody, Neal-Williams makes sufficient allegations that she was personally involved in his struggle to get proper medical treatment. He alleges that she knew about his serious medical needs as the medical supervisor in receipt of his many grievances and medical requests,

and that she ignored all of them.  ECF No. 5 at 8.  Further, Defendant Cody's alleged involvement is apparent through her participation in the meeting with Neal-Williams and Dr. Mohamed where she allegedly told Neal-Williams not to worry about the past and not to complain about her doctors, had a stack of grievances at the meeting but had not answered them, showed Neal-Williams a copy of a letter from his surgeon advising that he was no longer a candidate for surgery, and discussed future plans for medical treatment.  ECF No. 5 at 10-11.  Neal-Williams has alleged sufficient personal participation on the part of Defendant Cody.

As to Defendant Sewell, Neal-Williams alleges that she took over from Defendant Cody as medical supervisor, attended the July 15, 2021 meeting with Dr. Mohamed in a training capacity, and failed to answer grievances when she became the medical supervisor sometime thereafter.  ECF No. 5 at 6, 16.  However, Neal-Williams does not allege that Defendant Sewell actively participated in the meeting, when she became the medical supervisor, if and when she became responsible for answering grievances on medical issues, or if any grievances were filed during the time she served as medical director.[6]  Therefore, the Complaint will be dismissed as to Defendant Sewell.

### 2.    Summary Judgment

The County Defendants argue that summary judgment should be granted in their favor because the evidence in the record demonstrates that "they did not possess the necessary medical licensure or authority to prescribe or alter medication or refer, or order physical therapy, occupational therapy, surgical procedures, or appointments with medical professionals located outside the Department of Correction and Rehabilitation."  ECF No. 17-1 at 25 (citing ECF No. 17-2).  Defendants do not contest that Neal-Williams had a serious medical need.  Instead, Defendants appear to suggest that because these Defendants could not personally provide

---

[6] The Complaint was filed on July 28, 2021, less than two weeks following the meeting at which Sewell was still a trainee.

necessary care because of licensing restrictions or job descriptions, they could not be deliberately indifferent to his serious medical needs.  This argument is specious; there is no requirement in the deliberate indifference standard that a defendant be able to personally provide required medical treatment.  The County Defendants' only other argument is that Neal-Williams' refutes his own allegations by admission that he was "provided consistent and ongoing medical care during his detention at MCCF, was housed in the medical department unit so that he could get better access to care, was prescribed and provided medication, attended numerous appointments and meetings with medical staff at MCCF, had his off-site therapy scheduled by MCCF staff, [and] attended appointments with his surgeon, Sophia Strike, M.D. at Johns Hopkins University Hospital, with transport facilitated by MCCF."  ECF No. 17-1 at 7. The County Defendants, however offer no explanation why, notwithstanding this "regular and consistent care," Neal-Williams allegedly never received his surgical bands, never had his screws cleaned, acquired an infection and had to have the screws prematurely removed, and did not attend therapy or undergo surgery in a timely fashion.  Neal-Williams' describes with specificity the manner in which he contends each of the County Defendants was involved in the alleged lack of adequate medical care. Nothing in the record that directly refutes those allegations.  ECF No. 5.  There remains a genuine issue of material fact as to whether Defendants Robin Cody, Gulshan Uddin, Umu Kabba, and Gladys Onokoko-Othepa were deliberately indifferent to Neal-Williams' serious medical needs.  As such, The County Defendants' Motion, construed as a motion for summary judgment, will be denied as to these Defendants.

### B.  Wellpath Defendants

The Wellpath Defendants argue that Neal-Williams failed to state a claim against them. They do not argue for summary judgment in the alternative. The Wellpath Defendants argue that "[r]egardless of the facts alleged in the Complaint, the contents of MCCF medical records Plaintiff

attached to his Complaint negate the possibility of any § 1983 violation by the Wellpath Defendants." ECF No. 20-1 at 7.  The Wellpath Defendants imply that Neal-Williams has stated a claim in his Complaint, but that the attached medical records defeat that claim.  To the contrary, Neal-Williams' allegations that both doctors knew of his need for surgical rubber bands, daily cleanings, pain medication, and urgent surgery and/or therapy failed to take sufficient action to ensure any of those was accomplished is not contradicted by the documents he submitted.  While the doctors saw him on several occasions, the records do not show that any of his claimed needs were met.

As to Defendant Dr. Wilson, Neal-Williams alleges the doctor was the first person he encountered when he arrived at MCCF on April 16, 2021, that he explained in detail the need for the rubber bands and the need to have the pins regularly cleaned, but that  Dr. Wilson failed to ensure either of those things happened.  ECF No. 5 at 2.  In addition, Neal-Williams alleges that Dr. Wilson failed to arrange therapy for him because "no office wants inmates inside," notwithstanding his surgeon having already arranged it.  *Id*. at 4.  He also alleges that Dr. Wilson would not prescribe necessary medication.  *Id*.  Taken as true, these allegations are sufficient to form the basis of a § 1983 claim for deliberate indifference.

Similarly, Neal-Williams alleges that Dr. Mohamed saw him several times but failed to provide necessary medical care.  ECF No. 5 at 5.  He alleges that he asked Dr. Mohamed why he did not have his rubber bands and why his screws were not being cleaned, and she told him she did not know.  ECF No. 1 at 4.  He further alleges that he told her he needed to be in therapy due to his canceled surgery and to which she responded that his surgery was canceled because there was no place to go for post-operative therapy.  *Id*.  He alleges that he repeatedly told Dr. Mohamed and Dr. Wilson that the medication they gave him was ineffective because it is for nerve pain, which he does not have, and that Dr. Mohamed told him, "you're going to have pain."  *Id*. at 6.

21

Neal-Williams sufficiently alleges that Dr. Mohamed was deliberately indifferent to his serious medical need, as she allegedly saw Neal-Williams multiple times but took no action to ensure he was provided with proper medication, proper surgical equipment, therapy, or surgery.

Because Neal-Williams has stated a § 1983 claim against the Wellpath Defendants, their Motion to Dismiss for failure to state a claim will be denied.

### III.    Qualified Immunity

Lastly, the County Defendants are not entitled to qualified immunity. Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome a claim of qualified immunity from a § 1983 claim, there must be a showing that (1) the government official violated a federally protected right of the plaintiff; and (2) the identified right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.* Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the United States Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987) (citations omitted); *Wilson v. Kittoe*, 337 F.3d 392, 391 (4th Cir. 2003). If the court determines that the government official took actions that a reasonable officer could have believed were lawful, then the official is entitled to dismissal before discovery. *Id.*

Neal-Williams alleges The County Defendants knew his right hand had surgical screws, required surgical rubber bands which were missing, required urgent surgery and/or physical or

occupational therapy, and was in significant pain and none of these Defendants took any action to ensure Neal-Williams serious medical needs were met.  Construed in the light most favorable to Neal-Williams, the conduct at issue amounts to deliberate interference to Neal-Williams' serious medical need.  Unquestionably, it is well established that such conduct violates the Fourteenth Amendment.  Therefore, based on the record presently before the court, The County Defendants are not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the dispositive motions are granted in part and denied in part. The Wellpath Defendants' Motion to Dismiss is denied. The County Defendants Warden Malagari, Director Talley, Officer Bean, Officer Nash, and Jada Sewell's Motion to Dismiss, or in the Alternative, for Summary Judgment is granted.  County Defendants Robin Cody, Gulshan Uddin, Umu Kabba, and Gladys Onokoko-Othepa's Motion for to Dismiss, or in the Alternative, for Summary Judgment, construed as a motion for summary judgment, is denied.  Plaintiff will be given 28 days in which to file a motion to appoint counsel.  An order follows.


_____8.26.2022_____                    _____/S/_____
Date                                               Julie R. Rubin
                                                   United States District Judge